IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



EOD

06/22/2022

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ROSS JEFFREY DEUEL** | § | Case No. 19-43056 |
| **and LUCIE AMANDA DEUEL** | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| THOMAS COFFMAN | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Adversary No. 20-4014 |
| | § | |
| ROSS JEFFREY DEUEL | § | |
| and LUCIE AMANDA DEUEL | § | |
| | § | |
| Defendants | § | |

**MEMORANDUM OF DECISION REGARDING
DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT**

ON THIS DATE the Court considered the "Amended Motion for Summary

Judgment" (the "Amended Motion") filed by the Defendants, Ross and Amanda Deuel

(the "Defendants" or "Debtors"), and the respective objections, replies, and other

documents filed in the above-referenced adversary proceeding.  In the "Complaint to

Objecting to Debtor's Discharge" (the "Complaint"), Plaintiff, Thomas Coffman (the

"Plaintiff"), seeks a finding of nondischargeability of a debt allegedly owed by the

Defendants under 11 U.S.C. §§§ 523(a)(2)(A), (a)(4), and/or (a)(6).  Upon due

consideration of the pleadings, the proper summary judgment evidence submitted by the

parties, and the relevant legal authorities, the Court concludes that genuine issues of

material fact remain.  For the following reasons stated in this Memorandum of Decision,

the Defendants' Amended Motion should be DENIED.

## I. Jurisdiction

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(a) and

157(a).  The Court has the authority to enter a final judgment in this adversary proceeding

because it constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## II. Procedural Background

Defendants filed a voluntary petition for Chapter 7 (the "Case") relief under Title

11 of the United States Code (the "Bankruptcy Code") on November 6, 2019.[1]  On

January 31, 2020, Plaintiff filed the Complaint and initiated this adversary proceeding.  In

addition to the claims under 11 U.S.C. § 523(a), Plaintiff's Complaint also included the

following causes of action: (1) breach of contract; (2) common law fraud; (3) assault; (4)

intentional infliction of emotional distress; (5) libel; (6) civil conspiracy; and (7) wiretap.[2]

Defendants responded by filing a "Motion to Dismiss Adversary Proceeding for Failure to

State Claim" (the "12(b)(6) Motion") on March 2, 2020.  Plaintiff filed a response to the

12(b)(6) Motion, an "Amended and Supplemental Pleading," and a "Motion for Summary

Judgment" (the "Plaintiff's Motion") on March 26, 2020.  The Court dismissed Plaintiff's

Motion without prejudice on April 3, 2020.  On April 13, 2020, Defendants filed both an

---

[1] *In re Deuel*, No. 19-43056, Voluntary Petition, ECF No. 1.

[2] *Coffman v. Deuel*, Adv. No. 20-4014, 15-19, ECF No. 1.

"Opposition to Plaintiff's Motion for Summary Judgment" (the "Opposition"), and

"Defendants' Motion to Dismiss Amended and Supplemental Pleading."  On April 30,

2020, the Court entered two (2) orders, including: (1) an "Interim Order Regarding

Defendants' Motion to Dismiss," which provided Plaintiff the opportunity to file a

"Second Amended Complaint" in order to refine the "extensive factual background"

provided in the "Amended and Supplementary Pleading," and (2) an "Order Denying

Defendants' Motion to Dismiss Plaintiff's Amended and Supplemental Pleading."[3]

Plaintiff filed a "Second Amended and Supplemental Causes of Action" on May 22,

2020.  Defendants responded on June 4, 2020, and also filed a "Motion to Dismiss

Second Amended and Supplemental Pleading."

    Plaintiff filed his "Second Motion for Summary Judgment" (the "Plaintiff's

Second Motion") on July 2, 2020, while Defendants filed a "Motion for Judgment on the

Pleadings" on July 20, 2020.

    On August 18, 2020, the Court entered several orders and the "Court's

Restatement of Plaintiff's Second Amended Complaint" (the "Court's Restatement).[4]

The Court deemed it "necessary to restate the allegations of Plaintiff's Second Amended

Complaint...in order to advance this litigation...making feasible for the Defendants to

---

[3] Interim Order Defs.' Mot. Dismiss, 4, ECF No. 17.

[4] These orders include: "Order Dismissing Without Prejudice Plaintiff's Second Motion for Summary Judgment," "Order Dismissing Defendant's Motion for Judgment on the Pleadings," "Order Denying Defendants' Rule 11 Motion and Dismissing as Moot Defendants' Motion to Strike Plaintiff's Response Thereto," and "Order Denying Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint."

respond to the various factual allegations..."[5]  Defendants filed an "Answer to the Court's

Restatement of Plaintiff's Second Amended Complaint" (the "Answer") on September 4,

2020.  Plaintiff filed a "Motion to Withdraw Motion for Default Judgment" on September

8, 2020, and filed his "Response to the Defendants' Answer to the Plaintiff's Second

Amended Complaint" on September 19, 2020.  On October 8, 2020, Plaintiff filed a

"Motion for Summary Judgment for Libel Against the Defendants," and later filed a

"Motion for Summary Judgment Against the Defendant Ross Jeffrey Deuel for Assault"

on October 22, 2020.  He subsequently filed a "Motion for Summary Judgment Against

the Defendants Under 523(a)(6) Willful and Malicious Injury and Intentional Infliction of

Emotional Distress" on November 2, 2020.  On February 2, 2021, the Court entered an

"Omnibus Order Denying (1) Plaintiff's Motion for Partial Summary Judgment

Regarding Libel; (2) Plaintiff's Motion for Partial Summary Judgment Regarding

Assault; (3) Plaintiff's Motion for Partial Summary Judgment Regarding Intentional

Infliction of Emotional Distress; and (4) Plaintiff's Supplemental Motion for Partial

Summary Judgment Regarding Assault."

Defendants filed their original "Motion for Summary Judgment" on March 12,

2021, then filed their first Amended Motion on April 5, 2021.  Following Defendants'

Amended Motion, the Court entered an "Interim Order Regarding Defendants' Amended

Motion for Summary Judgment" (the "Interim Order") on October 7, 2021, in which the

---

[5] Court's Restatement, 1 n.1, ECF No. 34.

Court allowed Defendants the opportunity to revise the Amended Motion because it was insufficient under the guidelines set by Fed. R. Civ. P. 56 and relevant case law. Defendants timely filed their revised Amended Motion on October 27, 2021, which the Court now considers in this Memorandum of Decision.  Defendants seek summary judgment as to Plaintiff's following claims: (1) breach of contract; (2) common law fraud; (3) assault; (4) intentional infliction of emotional distress; (5) libel; (6) civil conspiracy; and (7) wiretap under 18 U.S.C. § 2520 and Tex. Civ. Prac. & Rem. Code § 123.002. Defendants also seek summary judgment denying Plaintiff's nondischargeability claims under 11 U.S.C. §§§ 523(a)(2)(A), (a)(4), and (a)(6).[6]

Plaintiff filed his "Response to Defendants' Amended Motion for Summary Judgment Combined with Brief" (the "Plaintiff's Response") on November 24, 2021. Plaintiff stated that he was no longer pursuing the following claims: (1) breach of contract; (2) common law fraud; (3) assault; (4) libel; (5) civil conspiracy; and (6) wiretapping.[7]  Plaintiff neither included intentional infliction of emotional distress on this list, nor made an argument against summary judgment in the "Arguments and Authorities" section of Plaintiff's Response concerning that claim.[8]

---

[6] Brief Supp. Defs.' Am. Mot., 5, ¶ 3, ECF No. 85.

[7] Pl.'s Resp. Am. Mot., 2 n.1, ECF No. 94.  Thus, the Court will not consider any of these causes of action in this Memorandum.  The Court will address these claims in the companion order.

[8] *Id.*

## III. Factual Background[9]

Defendants are married co-debtors in the Case.[10]  They have known Plaintiff since

approximately 2008, and previously had a "close relationship."[11]  In 2017, Plaintiff and

Defendants entered into an agreement (the "Agreement") to start a telecommunications

business together.[12]  The Agreement was drafted by the law firm Eggleston King, LLP,

which employed Mrs. Deuel's mother, Ms. Susan Morgan, at that time.[13]  The Agreement

stated that Plaintiff was both a 50% owner and 50% managing-member of Ross & Riggs

Investments, LLC, while Defendants split the other 50%.[14]  Plaintiff and Defendants

signed the Agreement on January 27, 2017.[15]  The same firm filed the assumed named

certificate for MobilizEverything on February 2, 2017.[16]  The certificate named Plaintiff

---

[9] The facts presented are those which appear uncontested between the parties and are present only as a general factual background to the legal claims addressed by the Amended Motion.  This section is not intended to resolve any disputed or contested facts by and among the parties.

[10] *See In re Deuel*, No. 19-43056, Voluntary Petition, ECF No. 1.

[11] Pl.'s Resp. Am. Mot., Ex. 1, 1, ¶¶ 2-3, ECF No. 94-1.

[12] *See* Pl.'s Resp. Am. Mot., Ex. 2, 2, ECF No. 94-2; *see also* Pl.'s Resp. Am. Mot., Ex. 3, 5, ECF No. 94-2.

[13] Pl.s Resp. Am. Mot., Ex. 2, 2, ECF No. 94-2.

[14] *Id*.

[15] *Id*.

[16] Pl.'s Resp. Am. Mot., Ex. 1-A, 15, ECF No. 94-2.  The Court notes that Exhibit 1-A submitted by Plaintiff in opposition to the Amended Motion is comprised of 186 pages and twenty-four (24) documents.  In the event that Plaintiff seeks to introduce any of the documents contained within Exhibit 1-A into evidence at trial, such documents should be separately marked pursuant to LBR 7016(d).  For citation purposes in this Memorandum, the Court refers to the various documents by the CM/ECF designated page numbers.

and Defendants as managing members of MobilizEverything, was signed by Mrs. Deuel, and filed in Collin County, Texas.[17]

Plaintiff's business relationship with Defendants began to deteriorate towards the end of 2017.[18]  On February 21, 2018, Plaintiff emailed Defendants to inform them that he would be parting ways with the business.[19]  Between April 23-24, 2018, Plaintiff and Mr. Deuel exchanged emails with Mr. Brett Gunter, the attorney from Eggleston King, LLP who drafted the Agreement creating MobilizEverything.[20]  The emails concerned the parties' aim to dissolve MobilizEverything and separate their interests.[21]  Mr. Gunter informed Plaintiff and Mr. Deuel that because the company was split equally between Plaintiff and Defendants, neither party had the "ability to unilaterally impose specific sale, buyout, or separation terms on the other."[22]  Mr. Gunter further informed them that if the separation was in dispute, Eggleston King, LLP would not "be able to 'mediate' a resolution" or "represent one [party] against the other without express written consent from all parties."[23]

---

[17] *Id.*

[18] Pl.'s Resp. Am. Mot., Ex. 1, 2, ¶ 9, ECF No. 94-1.

[19] Pl.'s Resp. Am. Mot., Ex. 1-A, 10, ECF No. 94-2.

[20] *Id.* at 169-70.

[21] *Id.*

[22] *Id.*

[23] *Id.*

This email thread continued on April 25, 2018, with Plaintiff alleging that Defendants had falsely identified MobilizEverything as both a veteran-owned small business and a small disadvantaged business.[24] Furthermore, Plaintiff proclaimed that he had notified both his attorney and the "Federal Service Desk" of the alleged "deliberate false statements" by Defendants.[25] Plaintiff explained that he had not provided the Federal Service Desk with "complete details or documentation" of the alleged false statements "as a courtesy," but that he expected to hear back from a case worker that day and would be providing further information if Mr. Deuel did not respond to the email thread.[26] Plaintiff's "possible solution" to the "fraud" allegedly committed by Defendants "against the federal government" included a "list of terms" he wanted Defendants to meet.[27] It was a "non-negotiable" for him to take "sole" ownership over MobilizEverything.[28] Mr. Gunter responded to the email thread, exclaiming that he was unfamiliar with the fraud "allegations" asserted by Plaintiff.[29] Mr. Gunter informed both parties that "based on the tone" of the emails, he did not think it was "appropriate" for

---

[24] Pl.'s Resp. Am. Mot., Ex. 1-A, 171, ECF No. 94-2.

[25] *Id.* It is unclear based on the email or any other evidence presented by Plaintiff what entity or organization he meant by "Federal Service Desk."

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] Pl.'s Resp. Am. Mot., Ex. 1-A, 173, ECF No. 94-2.

Eggleston King, LLP to represent either party in "an ongoing dispute."[30]

On May 1, 2018, Mr. Deuel emailed Plaintiff a proposed agreement concerning the separation of MobilizEverything.[31]  The purported agreement gave Plaintiff and his wife 100% ownership of Ross & Riggs Investments, LLC d/b/a MobilizeEverything, allowing them to "keep all customers, opportunities, and incoming revenues on all existing clients."[32]  According to the proposed terms, Defendants would receive the following in exchange for relinquishing their ownership stake: (1) both their original $10,000.00 investment and a $25,000.00 buyout for MobilizEverything; (2) all existing equipment and software, including laptops, tables, accessories, etc.; (3) any existing phone number(s) on the MobilizEverything account; (4) a release of "any and all liabilities of Ross & Riggs Investments, LLC and MobilizEverything;" and (5) Ross & Riggs Investments, LLC d/b/a MobilizEverything would be responsible for all legal fees associated with the separation.[33]

On May 10, 2018, Plaintiff filed a petition for a temporary restraining order (the "TRO") and a temporary injunction against Defendants in state court in Collin County,

---

[30] Id.

[31] Pl.'s Resp. Am. Mot., Ex. 1-A, 177-78, ECF No. 94-2.

[32] Id.

[33] Id.

Texas.[34]  The court granted the TRO the same day.[35]

On July 5, 2018, prior to a scheduled hearing in the state court case, Plaintiff and

Defendants engaged in negotiations and made a Rule 11 Agreement, which they read into

the state court record.[36]  According to the terms of that agreement, the parties agreed that

Ross & Riggs Investments, LLC would be wound down and terminated by December 31,

2018.[37]

On September 6, 2018, Plaintiff emailed Defendants' state court attorney, Ms.

Ronda Harris, and expressed concerns over Defendants' alleged violations of the Rule 11

Agreement.[38] On September 11, 2018, Ms. Harris emailed Plaintiff's state court attorney,

---

[34] Brief Defs.' Am. Mot., Ex. D, ECF No. 85.

[35] Brief Defs.' Am. Mot., Ex. B, ECF No. 85.

[36] Brief Defs.' Am. Mot., Ex. E, 4, ECF No. 85-5.

[37] Pl.'s Resp. Am. Mot., Ex. 1-A, 122, ECF No. 94-2.  The parties also agreed to the following terms: (1) Plaintiff would retain $51,000.00 he allegedly removed from the Ross & Riggs Investments, LLC bank account; (2) Defendants would take "responsibility of all known obligations" of Ross & Riggs Investments, LLC; (3) implementation of a non-disparagement agreement with a liquidation clause of $7,500.00; (4) full release of all claims by both parties from July 5, 2018; (5) criminal and bank fraud charges against Plaintiff dropped by July 6, 2018; (6) Plaintiff would be responsible for and indemnify for any contract he entered into that Defendants were not aware of as of July 5, 2018; (7) Plaintiff would not represent or claim any association with Ross & Riggs Investments, LLC or d/b/a MobilizEverything moving forward; (8) Plaintiff would return "HP laptop" and Ross & Riggs Investments, LLC would return a Toshiba laptop to Plaintiff in good working condition; (9) Ross & Riggs Investments, LLC would provide proof of the winding down and termination of the company by January 8, 2019; (10) Plaintiff would return all T-Mobile and Verizon equipment that he had not paid for; (11) Ross & Riggs Investments, LLC would not enter into any new contracts from July 5, 2018 until the wind down; (12) attorneys would exchange laptops and any other designated equipment; and (13) Ms. Ronda Harris, Defendants' attorney would be responsible for drafting a settlement agreement and final order reflecting these terms.  *Id*. at 122-23.

[38] Brief Defs.' Am. Mot., Ex. B, ECF No. 85.  It is unclear from the evidence presented whether Ms. Harris responded to this email.

Mr. James Owens, several proposed documents for Plaintiff's agreement and/or

signature.[39]  On December 7, 2018, Plaintiff emailed Ms. Harris, stating that "[t]here is

not a reality anywhere where I am signing a document that implies that I stole the

remaining $51,000.00 of my retirement that the [Defendants] had not already stole[]."[40]

Plaintiff further stated he would not sign the Rule 11 Agreement until Defendants

provided proof that they had wound down Ross & Riggs Investments, LLC "per the court

orders."[41]

On August 13, 2019, Defendants moved for summary judgment against Plaintiff in

state court.[42]  The court conducted a hearing on Defendants' summary judgment motion

on September 5, 2019.[43]  On September 13, 2019, the court entered an order granting in

part and denying in part Defendants' motion for summary judgment.[44]  The case had a

jury trial scheduled to determine any remaining issues on November 11, 2019.[45]  The

court, however, received notice of Defendants' bankruptcy filing on November 8, 2019,

---

[39] Brief Defs.' Am. Mot., Ex. C, 33, ECF No. 85.

[40] *Id*. at 57.

[41] *Id*.

[42] Brief Defs.' Am. Mot., Ex. C, ECF No. 85.

[43] Brief Defs.' Am. Mot., Ex. A, 1, ECF No. 85.

[44] *Id*.

[45] Brief Defs.' Am. Mot., Ex. D, 3, ECF No. 85.

after which the jury trial was cancelled.[46]

Plaintiff filed this adversary proceeding on January 31, 2020.[47]  Defendants filed

the certificate of termination for Ross & Riggs Investments, LLC on May 19, 2020.[48]

### IV. Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986) (quoting

Fed. R. Civ. P. 56(c)).  Fed. R. Bankr. P. 7056 incorporates Fed. R. Civ. P. 56 so as to

apply to adversary proceedings.  Thus, if summary judgment is appropriate, the Court

may resolve the case as a matter of law.

The moving party always bears the initial responsibility of informing the Court of

the basis for its motion and producing evidence which it believes demonstrates the

absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The manner

in which the necessary summary judgment showing can be made depends on which party

will bear the burden of proof at trial.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077

n.16 (5th Cir. 1994).  If, as in this case, the nonmovant "'bears the burden of proof at

---

[46] *Id.*

[47] *See* Compl., ECF No. 1.

[48] Pl.'s Resp. Am. Mot., Ex. 1-A, 185-86, ECF No. 94-2.  Mrs. Deuel signed the certificate on behalf of Ross & Riggs Investments, LLC on May 14, 2020, and the Secretary of State of Texas received it on May 19, 2020.  *Id.*

trial, the movant may merely point to an absence of evidence, thus shifting to the

nonmovant the burden of demonstrating by competent summary judgment proof that there

is an issue of material fact warranting trial."[49] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d

616, 618 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986)). "A fact is material only if its resolution would affect the outcome of the action."

*Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). Thus, the

nonmovant must evince more than "some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the

nonmoving party were to present these factual disputes at trial, they must be such that a

rational fact finder might find in favor of the nonmoving party. *Id.* at 587. "All

reasonable inferences must be viewed in the light most favorable" to the nonmoving

party, and "any doubt must be resolved in favor of the nonmoving party." *In re Louisiana

Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita*, 475 U.S. at

586).

## V. Issues Precluded From Re-Litigation

For the following reasons, the Defendants requested judgment on the

nondischargeability claims under 11 U.S.C. § 523 in their favor as a matter of law must

---

[49] "[T]he burden on the moving party may be discharged by "showing"–that is, pointing out to
the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex
Corp.*, 477 U.S. at 325. It is insufficient, however, "to move for summary judgment without supporting
the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove its case."
*In re Hydro-Action, Inc.*, 341 B.R. 186, 193 (Bankr. E.D. Tex. 2006). "If the moving party fails to meet
this burden, the motion must be denied, regardless of the nonmovant's response." *Tubacex, Inc. v. M/V
Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

be denied.  Nevertheless, certain facts have been established.  The following facts are

relevant to the issues before the Court, and have been established in this proceeding under

the guidelines of Local District Court Rule CV-56, as incorporated by Local Rule of

Bankruptcy Procedure 7056(d).[50]  These facts will not be re-litigated at the trial for this

adversary proceeding.

1.  Defendants filed a voluntary petition for Chapter 7 relief under the Bankruptcy
    Code on November 6, 2019.[51]

2.  On January 31, 2020, Plaintiff filed the Complaint and initiated this adversary
    proceeding.

3.  On May 10, 2018, Plaintiff filed a petition for a TRO and temporary injunction
    against Defendants in state court in Collin County, Texas.[52]  The court granted the
    TRO the same day.[53]

---

[50] Local District Court Rule CV-56 directs a movant to include a Statement of Undisputed
Material Facts and to support such a statement with "appropriate citations to proper summary judgment
evidence."  It directs a respondent to ensure that any response "should be supported by appropriate
citations to proper summary judgment evidence."  With regard to the disposition of the motion, the rule
states:

> (c) **Ruling**.  In resolving the motion for summary judgment, the court will assume that the facts
> as claimed and supported by admissible evidence by the moving party are admitted to exist
> without controversy, except to the extent that such facts are controverted in the response filed in
> opposition to the motion, as supported by proper summary judgment evidence.  The court will
> not scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to
support such a challenge by references to proper summary judgment evidence, results in the facts as
claimed and supported by admissible evidence by the movant "admitted to exist without controversy."
E.D. TEX. LOCAL R. CV–56(c).

[51] *In re Deuel*, No. 19-43056, Voluntary Petition, ECF No. 1.

[52] Brief Defs.' Am. Mot., Ex. D, ECF No. 85.

[53] Brief Defs.' Am. Mot., Ex. B, ECF No. 85.

4.  On July 5, 2018, the parties met prior to a scheduled hearing in state court.[54]  They made a Rule 11 Agreement, which they read into the court record.[55]

5.  The Rule 11 Agreement stated that Plaintiff would retain the $51,000.00 he had "removed" from the Ross & Riggs Investments, LLC bank account.[56]

6.  The Rule 11 Agreement stated that Defendants would take sole control over Ross & Riggs Investments, LLC, and they would take responsibility of all of the company's "known" obligations.[57]

7.  The Rule 11 Agreement included a bilateral non-disparagement agreement with a liquidation clause of $7,500.00.[58]

8.  The Rule 11 Agreement also included a full mutual release of claims by both parties.[59]

9.  The Rule 11 Agreement directed Defendants to withdraw the criminal charges they had filed against Plaintiff by July 6, 2018.[60]

10.  The Rule 11 Agreement stated that Plaintiff would be responsible for any contracts he entered into on behalf of Ross & Riggs Investments, LLC that Defendants were unaware of as of July 5, 2018.[61]  Furthermore, Plaintiff would no longer be allowed to represent or "claim any association" with Ross & Riggs Investments, LLC or d/b/a MobilizEverything moving forward.[62]

---

[54] Brief Defs.' Am. Mot., Ex. C, 11, ¶ 34, ECF No. 85.

[55] *Id*. at 19-31.

[56] *Id*. at 19, ¶ 1.

[57] *Id*. at ¶ 2.

[58] *Id*. at ¶ 3.

[59] *Id*. at ¶ 4.

[60] Brief Defs.' Am. Mot., Ex. C, 19, ¶ 5, ECF No. 85.

[61] *Id*. at ¶ 6.

[62] *Id*. at ¶ 7.

11.    The Rule 11 Agreement stated that Plaintiff would return an "HP laptop" to
Defendants, who would return a "Toshiba laptop" to Plaintiff.[63]  Plaintiff was
further required to return all "T-Mobile and Verizon equipment that he [had] not
paid for" to Defendants.[64]

12.    The Rule 11 Agreement stated that Ross & Riggs Investments, LLC would provide
proof of winding down and termination of the company by January 8, 2019.[65]
Furthermore, Ross & Riggs Investments, LLC would not enter into any new
business contracts from July 5, 2018 until the wind down.[66]

13.    The Rule 11 Agreement was to be formally drafted by Ms. Harris.[67]

14.    On September 6, 2018, Plaintiff emailed Ms. Harris concerning alleged violations
of the Rule 11 Agreement by Defendants.[68]

15.    On September 11, 2018, Ms. Harris emailed Mr. Owens several proposed
documents, including an Order Granting Joint Motion for Nonsuit, Joint Motion
for Nonsuit, and a Full and Final Settlement and Release Agreement.[69]

16.    On December 7, 2018, Plaintiff emailed Ms. Harris, stating that "[t]here is not a
reality anywhere where I am signing a document that implies that I stole the
remaining $51,000.00 of my retirement that the Deuel[]s had not already stole[]."[70]

17.    Plaintiff further stated that he would not sign the formalized Rule 11 Agreement
unless the following happened: (1) Ms. Harris changed the "verbiage on the

---

[63] *Id*. at ¶ 8.

[64] *Id*. at 20, ¶ 10.

[65] *Id*. at ¶ 9.

[66] Brief Defs.' Am. Mot., Ex. C, 20, ¶ 11, ECF No. 85.

[67] *Id*. at ¶ 13.

[68] Brief Defs.' Am. Mot., Ex. B, ECF No. 85.

[69] Brief Defs.' Am. Mot., Ex. C, 33, ECF No. 85.  It is unclear from the evidence provided by
Defendants if Mr. Owens responded to the email.

[70] *Id*. at 57.

settlement" so that it no longer implied that he "stole" his own money from "an account that [he] was fraudulently removed from;" (2) Defendants provided proof that a Ross & Riggs Investments, LLC contractor was paid for alleged services rendered; and (3) Defendants provided proof that Ross & Riggs Investments, LLC was "wound down per the court orders."[71]

18.  In the December 7 email, Plaintiff alleged that Ms. Harris "instructed" or counseled Defendants "on how to destroy [him] as a result of their numerous federal crimes."  Plaintiff did not allege any specific "federal crimes" in the email.[72]

19.  On August 13, 2019, Defendants filed a motion for summary judgment against Plaintiff in state court.[73]

20.  Defendants alleged in the summary judgment motion that Plaintiff breached the Rule 11 Agreement and "refused to sign the Settlement Agreement outlining the agreed upon terms of the Rule 11 Settlement Agreement and the Agreed Motion to Dismiss the case."[74]  Defendants sought to "enforce the Rule 11 Settlement Agreement as [a] breach of contract and [to] recover damages [] incurred in having to enforce the agreement."[75]

21.  The state court conducted a hearing on Defendants' motion for summary judgment on September 5, 2019.[76]  The court released an order granting in part and denying in part Defendants motion for summary judgment on September 13, 2019.[77]  The court did not make a decision on Defendants' claim for attorney's fees.[78]

---

[71] *Id.*

[72] *Id.*

[73] Brief Defs.' Am. Mot., Ex. C, ECF No. 85.

[74] *Id.* at 1, ¶ 2.

[75] *Id.*

[76] Brief Defs.' Am. Mot., Ex. A, 1, ECF No. 85.

[77] *Id.*

[78] *Id.*

22.    The state court awarded Plaintiff $51,000.00 he had previously removed from the Ross & Riggs Investments, LLC bank account.[79]

23.    The state court awarded Defendants sole ownership of Ross & Riggs Investments, LLC, as well as all obligations of the company.[80]

24.    The state court ordered both parties to use "reasonable and good faith efforts" to avoid making "disparaging" statements about each other.[81]

25.    The state court ordered that Plaintiff be responsible for any "contract or financial obligation" he entered into on behalf of Ross & Riggs Investments, LLC for which Defendants were not aware "as of July 5, 2018."[82]

26.    The state court ordered that Plaintiff was "permanently enjoined" from associating with Ross & Riggs Investments, LLC in any way.[83]

27.    The state court ordered Plaintiff to return the "HP laptop in his possession...in good order and working condition," and ordered Defendants to "return the Toshiba laptop" which belonged to Plaintiff.[84]

28.    The state court ordered Defendants to "wind down and terminate" Ross & Riggs Investments, LLC "within a reasonable time after the final disposition" of the state court case.[85]

29.    The state court ordered Plaintiff to "return all T-Mobile and Verizon equipment," and to "indemnify or reimburse" Ross & Riggs Investments, LLC for any

---

[79] *Id*. at ¶ 1.

[80] *Id*. at ¶ 2.

[81] *Id*. at ¶ 3.

[82] Brief Defs.' Am. Mot., Ex. A, 2, ¶ 5, ECF No. 85.

[83] *Id*. at ¶ 6.

[84] *Id*. at ¶ 7.

[85] *Id*. at 3, ¶ 8.

equipment he did not return.[86]

30.    The state court permanently enjoined Ross & Riggs Investments, LLC "from entering into any new business contracts."[87]

31.    The state court dismissed all "claims and causes of action" that Plaintiff and Defendants had against each other not addressed by the summary judgment order with prejudice, and denied Defendants' request for attorney's fees, which was to be determined at trial.[88]

32.    There was a jury trial scheduled in the state court case for November 11, 2019.[89] The state court , however, received a notice of Defendants' bankruptcy filing on November 8, 2019, after which the jury trial was cancelled.[90]

## VI. Res Judicata

In the Amended Motion, Defendants discuss their previous dismissal motion in which they raised res judicata as a defense.[91] The dismissal motion was denied by this Court.[92] While Defendants raised issue preclusion as an affirmative defense in their Answer, the Court will address the applicability of res judicata in this matter as to the remaining nondischargeability claims under 11 U.S.C. § 523(a).[93] In *Brown v. Felsen*, the

---

[86] *Id.* at ¶ 9.

[87] *Id.* at ¶ 10.

[88] Brief Defs.' Am. Mot., Ex. A, 3, ECF No. 85.

[89] Brief Defs.' Am. Mot., Ex. D, 3, ECF No. 85.

[90] *Id.*

[91] Brief Defs.' Am. Mot., 4, ¶ 2, ECF No. 85.

[92] Order Denying Defs.' Mot. Dismiss Pl.'s Second Am. Compl., ECF No. 35.

[93] Defs.' Answer Court's Restatement, ¶ 114, ECF No. 40.

Supreme Court considered whether "res judicata barred relitigation of the nature of respondent's debt to petitioner, even though the application of § 17 had not been in issue in the prior proceeding."[94]  *Brown v. Felsen*, 442 U.S. 127, 129 (1979).  The Court noted that "[b]y seeking discharge," the debtor "placed the rectitude of his prior dealings squarely in issue, for as the Court has noted, the Act limits that opportunity to the "honest but unfortunate debtor.""  *Id*. at 128.  11 U.S.C. § 523, like the previous § 17(a), "specifies that a *debtor* may not obtain a discharge if he has committed certain crimes or offenses."  *Id*.  The Court further noted that Congress altered the nondischargeability provisions of the Bankruptcy Act to "require creditors to apply to the bankruptcy court for adjudication of certain dischargeability questions..."  *Id*. at 128-29.  In their attempt to raise res judicata, Defendants argued that either the 11 U.S.C. § 523 claims, or similar claims under state law, could have been considered in the previous state court proceeding.  Applying res judicata to these claims, however, would "undercut a statutory policy in favor of resolving [§ 523] questions in bankruptcy court..."  *Id*. at 134.  Congress clearly intended to "commit" certain issues of nondischargeability "to the jurisdiction of the bankruptcy court."  *Id*. at 135.  Furthermore, "[i]t makes little sense...to resolve a federal dischargeability question according to whether or not the parties in state court waived their right to engage in hypothetical [bankruptcy] litigation in an appropriate forum."

---

[94] While the nondischargeability claim in *Brown* was based on § 17, the predecessor to 11 U.S.C. § 523, the Supreme Court explicitly noted that "[d]ischarge provisions substantially similar to § 17 of the Bankruptcy Act appear in § 523 of the new law. 11 U.S.C. App. § 523 (1976 ed., Supp. II)."  *Brown v. Felsen*, 442 U.S. 127, 139 n.1 (1979).

*Brown v. Felsen*, 442 U.S. 127, 136 (1979). In this case, Defendants filed a petition for bankruptcy *after* the state court granted them partial summary judgment.[95] The record does not indicate that the Case was more than "hypothetical litigation" at the time of both Defendants' motion for summary judgment in state court and the state court's order concerning that motion. *Id*. Just as in *Brown v. Felsen*, "[r]efusing to apply res judicata here would permit the bankruptcy court to make an accurate determination" as to whether Defendants in fact committed the fraud, willful malicious injury, etc. which Plaintiff alleges under 11 U.S.C. § 523(a). *Id*. at 138. As the Supreme Court noted, it is for questions of fraud and the like which are at issue here that "Congress intended that the bankruptcy court would resolve." *Id*. A bankruptcy court is best positioned to "weigh all the evidence," and can also consider whether or not a creditor's "failure to press these allegations at an earlier time betrays a weakness in his case on the merits." *Id*. Thus, this Court finds that res judicata does not bar Plaintiff's claims under 11 U.S.C. §§§ 523(a)(A), (a)(4), and (a)(6).

## VII. Collateral Estoppel

Defendants did raise collateral estoppel, modernly known as issue preclusion, as an affirmative defense in their Answer.[96] They did not raise it in the Amended Motion.[97]

---

[95] Brief Defs.' Am. Mot., Ex. D, 3, ECF No. 85.

[96] Defs.' Answer Court's Restatement, ¶ 114, ECF No. 40.

[97] *See* Defs.' Am. Mot., ECF No. 84; *see also* Brief Defs.' Am. Mot., ECF No. 85.

The Court, however, will address issue preclusion as to the nondischargeability issues under Plaintiff's 11 U.S.C. § 523 claims.  Issue preclusion means that once "an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot against be litigated between the same parties in any future lawsuit." *Simmons v. Bohanna (In re Bohanna)*, Adv. No. 18-4065, 2019 WL 7580173, at *9 (Bankr. E.D. Tex. Nov. 15, 2019) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)).  In the context of bankruptcy dischargeability cases, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability."[98] *Simmons*, 2019 WL 7580173, at *9 (quoting *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005)).  "While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable." *Simmons*, 2019 WL 7580173, at *10 (citing *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991)).

Because Defendants have previously argued that issue preclusion applies from the Texas state court case, this Court is required to apply Texas law concerning issue preclusion.  A party is precluded from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as

---

[98] While *Brown v. Felsen* concerned res judicata, the Supreme Court noted that if a state court, "[i]n the course of adjudicating a state-law question," determines "factual issues using standards identical to those of [§ 523], then collateral estoppel...would bar relitigation of those issues in the bankruptcy court." *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979).

adversaries in the first case. *Short v. Long (In re Long)*, Adv. No. 17-6007, 2019 WL

1556648, at *7 (Bankr. E.D. Tex. Apr. 9, 2019). Defendants argue that "the issues"

considered by the Amended Motion were "properly litigated" as shown in their state court

motion for summary judgment and the resulting partial summary judgment order.[99]

Defendants do not, however, present evidence that the issues raised by Plaintiff's 11

U.S.C. § 523 claims were "fully and fairly litigated" in the course of that state court

summary judgment motion. There is insufficient information on the record as to whether

any of the issues decided in the state court partial summary judgment meet the standard of

nondischargeability in a federal bankruptcy proceeding under 11 U.S.C. §§§

523(a)(2)(A), (a)(4), or (a)(6). *See e.g. Pancake v. Reliance Ins. Co. (Matter of Pancake)*,

106 F.3d 1242, 1244 (5th Cir. 1997) (finding that record before court failed to

demonstrate state court conducted hearing in which the defendant "received a full and fair

adjudication on the issue of fraud."). The Fifth Circuit has previously stated that "the

determination of whether a debt is nondischargeable under [§ 523] has been a matter of

federal bankruptcy law, not state law." *Matter of Dennis*, 25 F.3d 274, 277 (5th Cir.

1994). Furthermore, the Fifth Circuit has noted that it is only in "limited circumstances"

that "bankruptcy courts [may] defer to the doctrine of collateral estoppel and thereby

ignore Congress' mandate to provide plenary review of dischargeability issues." For

collateral estoppel to apply in a bankruptcy court, the first court must have "made

---

[99] Brief Defs.' Am. Mot., 4, ¶ 2, ECF No. 85.

specific, subordinate, factual findings on the identical dischargeability issue in

question–that is, an issue which encompasses the same *prima facie* elements as the

bankruptcy issue–and the facts supporting the court's findings are discernable from that

court's record." *Margolis v. Hensley (In re Hensley)*, 551 B.R. 792, 801 (E.D. Tex. 2015)

(citing *Matter of Dennis*, 25 F.3d at 277-78)).  Neither of those requirements are present

here.  There are no "discernable" facts in the record presented by Defendants to indicate

that the state court's partial summary judgment contained "specific findings" on an

identical dischargeability issue before both the state court and this Court, which include

either false representation, false pretenses, actual fraud, fraud or defalcation in a fiduciary

capacity, embezzlement, larceny, or willful and malicious injury.  *Id*.  Furthermore, the

state court's partial summary judgment order "does not appear to be premised on an

analysis of any of the substantive [nondischargeability] issues in this case," but rather is

based on Plaintiff's alleged failure to adhere to the Rule 11 Agreement.  *See Turner-Foga*

*v. GHK Enterprises, L.P. (In re Turner-Foga)*, Civ. No. SA-20-cv-0191-OLG, 2021 WL

3913587, at *2 (W.D. Tex. 2021).  Neither the state court's partial summary judgment,

nor any other evidence presented by Defendants on the record proves that the

nondischargeability issues were fully and fairly litigated in the state court proceeding.

There are no issues apparent to this Court from the state court summary judgment

proceeding that remotely mirror 11 U.S.C. §§§ 523(a)(2)(A), (a)(4), or (a)(6), let alone

were fully and fairly litigated in that forum.  Thus, this Court cannot rely on collateral

estoppel to resolve the nondischargeability issues as presented in the Amended Motion.

## VIII. Nondischargeability Standard

Defendants seek summary judgment on Plaintiff's claim of nondischargeability

pursuant to 11 U.S.C. §§§ 523(a)(2)(A), (a)(4), and/or (a)(6). When a plaintiff seeks to

except a debt from a discharge granted to a debtor, the plaintiff must prove their claims by

a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). All

exceptions to discharge under 11 U.S.C. § 523 "must be strictly construed against a

creditor and liberally construed in favor of a debtor so that the debtor may be afforded a

fresh start." *Hudson v. Raggio (Matter of Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

The Fifth Circuit, however, has ruled that there are limitations to this assumption,

particularly in reference to the exceptions under 11 U.S.C. § 523 in which the debtor has

allegedly committed fraud. *Tummel v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318-

319 (5th Cir. 2005). Consequently, courts must balance a debtor's "fresh start" against

protecting the victims of fraud. The Court will discuss each dischargeability exception

claim in turn**.**

*A. 11 U.S.C. § 523(a)(2)(A)*

Plaintiff contends that Defendants owe him damages which should be excepted

from discharge under 11 U.S.C. § 523(a)(2)(A) as a debt obtained by false pretenses, false

representation, or actual fraud. The Bankruptcy Code states:

> "A discharge under § 727 of this title does not discharge an individual debtor from
> any debt for money, property or services...to the extent obtained by false pretenses,

false representation, or actual fraud, other than a statement respecting the debtor's
or an insider's financial conditions."

11 U.S.C. § 523(a)(2)(A).  This subsection encompasses similar yet distinct causes of

action.  The Fifth Circuit has distinguished the elements of "actual fraud" and "false

pretenses and false representations."  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291

(5th Cir. 1995), *overruled on other grounds as recognized by Husky v. Ritz (Matter of*

*Ritz)*, 832 F.3d 560, 565 n.3 (5th Cir. 2016).

To obtain a judgment of nondischargeability for false representation or false

pretenses, a creditor must demonstrate that a debtor made: (1) knowing and fraudulent

falsehoods; (2) describing past or current facts; (3) that were relied upon by the other

party.  *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015)

(citing *Allison v. Roberts (Matter of Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)).  False

pretenses and false representations "both involve intentional conduct intended to create or

foster a false impression."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 389

(Bankr. E.D. Tex. 2009).  A false representation, however, "involves an express

statement, while a claim of false pretenses may be premised on misleading conduct

without an explicit statement."  *Wright*, 536 B.R. at 187.

Defendants argue that an email from Plaintiff's exhibits proves there are no

damages as a proximate result of any alleged representation by Defendants.[100]  Thus, the

burden shifts to Plaintiff to show that there is a genuine issue of material fact as to this

---

[100] Brief Defs.' Am. Mot., Ex. B, ECF No. 85.

claim. Plaintiff asserts that the damages go beyond those towards his reputation, such that he "suffered because of Defendants' fraudulent ouster of [him] from the company, the matter in which they locked him out of company files, and the way in which Defendants disrupted his business with clients at the time."[101]  The Court agrees that there is a genuine issue of material fact as to whether Plaintiff sustained damages under false pretenses, false representation, or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).

*B. 11 U.S.C. 523(a)(4)*

Plaintiff contends that Defendants are liable for damages which should be excepted based on fraud or defalcation by the Defendants while they acted in a fiduciary capacity, and/or for embezzlement or larceny.

For the claim of fraud or defalcation in a fiduciary capacity, Defendants argue that "[b]y failing to respond to Defendants' discovery requests, Plaintiff has failed to meet the burden of proof."[102]  Defendants' have previously argued that Plaintiff's failure to conduct or participate in discovery during the allotted period means that he is incapable of producing evidence in support of his claims.[103]  As the Court has previously stated, Defendants are not currently litigating in a Texas state court in which a "no-evidence" argument on a summary judgment motion is allowed.[104]  The Court gave the opportunity

---

[101] Pl.'s Resp. Am. Mot., 9, ¶ 34, ECF No. 94.

[102] Brief Defs.' Am. Mot., 17, ¶ 24, ECF No. 85.

[103] *See* Brief Defs.' Partial Mot. Summ. J., 2, ¶ 7, ECF No. 66-1.

[104] Interim Order Defs.' Am. Mot., ECF No. 82.

to submit the second Amended Motion in order to "make some showing that evidence on an essential point is wholly lacking."[105] Defendants attempt to rectify this issue in the Amended Motion by arguing that the Rule 11 Agreement included a full release of all claims by both parties.[106] Plaintiff, however, argues that there is a factual dispute as to whether the Rule 11 Agreement is effective based on Defendants' failure to comply with the Rule 11 Agreement by not winding down Ross & Riggs Investments, LLC by the purported deadline.[107] Plaintiff presented evidence showing that Defendants failed to wind down the business by the agreed upon date.[108] Defendants cannot, without support or authority, fail to comply with an agreement yet simultaneously invoke other terms of the same agreement. Plaintiff further contends that Defendants failed to substantively address Plaintiff's claim that Defendants breached their fiduciary duty, and that their "intent, purpose, and effect in removing Plaintiff from the company documents are live, factual issues..."[109] The Court agrees.

Plaintiff also alleges that there is a genuine issue of material fact as to whether Defendants committed embezzlement or larceny.[110] "Embezzlement is defined for the

---

[105] *Id.*

[106] Brief Defs.' Am. Mot., ECF No. 85.

[107] Pl.'s Resp. Am. Mot., 8, ¶ 32, ECF No. 94.

[108] *Id.*

[109] *Id.* at 11, ¶ 14.

[110] Plaintiff presents both the definitions of theft and embezzlement under Texas statutory and common law. Pl.'s Resp. Am. Mot., 11-12, ¶¶ 44-45, ECF No. 94. The Court notes that under 11 U.S.C.

purposes of § 523(a)(4) as the fraudulent appropriation of property by a person to whom

such property has been entrusted, or into whose hands it has lawfully come." *Miller v.*

*J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). Embezzlement

and larceny differ in timing. *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 190

(Bankr. E.D. Tex. 2015). While embezzlement requires that the property in question be

"lawfully" acquired at the outset, larceny applies when a "debtor unlawfully appropriates

property at the outset." *Id.*

Defendants do not address either embezzlement or larceny in the Amended

Motion.[111]  Rather, they again state that because Plaintiff "failed to respond to

Defendant's discovery requests, Plaintiff has failed to meet his burden of proof."[112]  This

no-evidence argument fails again for the aforementioned reasons. Defendants also

recount the state court partial summary judgment order which "dismissed with prejudice"

all "claims and causes of action" between the parties, but do not explicitly state that the

Court should dismiss the claim for this reason.[113]  Defendants argue that Plaintiff "agreed

to a [f]ull release of all claims" through the Rule 11 Agreement. Neither of these

arguments address the elements of embezzlement or larceny. Defendants do not present

evidence contrary to this claim, attempt to disprove the merits of Plaintiff's claim, or

---

§ 523(a)(4), federal law determines whether a debtor committed embezzlement or larceny.

[111] *See* Brief Defs.' Am. Mot., 17, ¶¶ 23-24, ECF No. 85.

[112] *Id.* at ¶ 24.

[113] *Id.*

show that there are no genuine disputes of material fact.

Plaintiff argues that the "record reflects that Defendants...unlawfully tampered with the business' governing documents," and that "Defendants' intent to permanently deprive [Plaintiff] of his share of the business is still a factual issue that must be determined..."[114] The Court agrees that there are still genuine issues of material fact as to whether Defendants committed embezzlement or larceny. Furthermore, regardless of Plaintiff's argument, Defendants' support their motion for summary judgment as to this cause of action with only "a conclusory assertion that the plaintiff has no evidence to prove its case." *In re Hydro-Action, Inc.*, 341 B.R. 186, 193 (Bankr. E.D. Tex. 2006). This is insufficient. As such, since Defendants have failed to meet their burden as the moving party, "the motion must be denied, regardless of the nonmovant's response." *Tubacex, Inc. V. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

*C. 11 U.S.C. § 523(a)(6)*

Debts arising "from willful and malicious injury by the debtor to another entity or the property of another entity" are nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(6). For an injury to be "willful," it must be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhu v. Geiger*, 523 U.S. 57, 61-62 (1998). Thus, reckless or negligent conduct by a debtor leading to an injury is insufficient. *Id*. at 64. Injuries covered by this exception are not limited to physical

---

[114] Pl.'s Resp. Am. Mot., 12, ¶¶ 46-48.

-30-

damage or destruction.  Harm to personal or property rights are also covered.  11 U.S.C. §

523(a)(6); *Cowin v. Countrywide Home Loans, Inc. (Matter of Cowin)*, 864 F.3d 344, 349

(5th Cir. 2017).

The 11 U.S.C. § 523(a)(6) exception for willful and malicious injury by a debtor

requires either: (1) objective substantial certainty of injury; or (2) subjective motive to

cause harm.  *See Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 606 (5th

Cir. 1998).  The objective standard is met when a court finds that a debtor intentionally

took action(s) that necessarily caused, or were substantially certain to cause the injury.

*Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006).

Under the subjective test, a court must find that the debtor intended the actual injury that

resulted.  *Id*.  The objective standard recognizes "the evidentiary reality that defendants

rarely admit malicious intent." *Yu v. Lau (In re Lau)*, No. 11-40284, 2013 WL 2476359,

at *7 (Bankr. E.D. Tex. May 28, 2013).  Thus, a court must analyze from a reasonable

person's perspective "whether the defendant's actions were substantially certain to cause

harm, [and] are such that the court ought to infer that the debtor's subjective intent was to

inflict a willful and malicious injury on the plaintiff." *Boyle v. Berkenbile (In re

Berkenbile)*, No. 12-41969, 2014 WL 797743, at *9 (Bankr. E.D. Tex. Feb. 27, 2014)

(citing *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D.

Tex. 2009) (citing *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. App'x. 360, 361-62

(5th Cir. 2007))).

-31-

Defendants again argue that "[b]y failing to respond to Defendants' discovery requests, Plaintiff has admitted Admission No. 4 and failed to meet his burden of proof."[115]  While it is true that Plaintiff is deemed to have admitted Admission No. 4, the "no-evidence" summary judgment argument fails for the aforementioned reasons. Defendants also point to Plaintiff's September 6, 2018 email as proof that Plaintiff "specifically denie[d] being injured in any way."  Whether Plaintiff believed he had been injured by Defendants' is irrelevant to this cause of action under either the objective or subjective tests.  It is a debtor's intent that matters under 11 U.S.C. § 523(a)(6).  Thus, a genuine issue of material fact remains.

## IX. Intentional Infliction of Emotional Distress

Defendants argue that the state court partial summary judgment order and the Rule 11 Agreement are sufficient reasons for the Court to deny Plaintiff's claim for intentional infliction of emotional distress.[116]  These arguments fail again for the aforementioned reasons.  In Plaintiff's Response, however, he enumerated state law claims which he no longer intends to pursue.  He listed all pleaded state law claims in this case *except* for intentional infliction of emotional distress.[117]  This may have been an oversight, especially as Plaintiff makes no effort to contest this portion of Defendants' Amended Motion or to provide any evidence in support of any element of the claim.  Nevertheless, the Court

---

[115] Brief Defs.' Am. Mot., 22, ¶ 26, ECF No. 85.

[116] *Id*. at 16, ¶ 13.

[117] Pl.'s Resp. Am. Mot., 2 n.1, ECF No. 94.

cannot grant summary judgment to Defendants on Plaintiff's claim for intentional

infliction of emotional distress, at least as presented in the Amended Motion.  If Plaintiff

no longer intends to pursue this claim, he is directed to file an appropriate pleading in this

case so that neither the Court nor Defendants expend time in preparing for trial of such a

claim.

## X. Conclusion

Based upon the Court's consideration of the pleadings, the summary judgment

evidence submitted therewith, the relevant legal authorities, and for the reasons set forth

herein, the Court concludes that the "Amended Motion for Summary Judgment" filed by

the Defendants, Ross and Lucie Deuel, is hereby DENIED.  Defendants failed to

demonstrate they were entitled to judgment as a matter of law regarding the

dischargeability issues raised under 11 U.S.C. §§§ 523(a)(2)(A), (a)(4), and/or (a)(6) in

the "Complaint."  Defendants similarly failed to demonstrate they were entitled to

judgment as a matter of law regarding Plaintiff's claim for intentional infliction of

emotional distress.  Therefore, these claims must be determined through a trial on the

merits.

Numerous factual issues, however, have been established through the summary

judgment evidence tendered to the Court.  Because the Court has not granted the relief

sought by the Defendants' "Amended Motion for Summary Judgment," it is appropriate

to state the material facts that are not genuinely in dispute pursuant to Fed. R. Civ. P.

56(g).  These established facts as set forth in this Memorandum shall not be re-litigated at

the trial for this adversary proceeding.  An appropriate order consistent with this opinion

shall be entered by the Court.


Signed on 06/22/2022


THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

-34-